PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GINROC, INC. *et al.*, | ) | |
| | ) | CASE NO.  5:25-CV-2142 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| DAVID GULLOTTI *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |
| | ) | [Resolving ECF No. 3] |

Pending before the Court is Defendant David Gullotti's Motion to Dismiss Plaintiffs'

Complaint pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6).  ECF No. 3.  The motion

is fully briefed.  Plf. Opp. Br., ECF No. 9; Def. Reply, ECF No. 12.  For the reasons below, the

Motion to Dismiss (ECF No. 3) is denied.

## I.    BACKGROUND

### A.  Factual Allegations[1]

Plaintiffs GinRoc Inc. ("GinRoc"), NOVA Waterless Car Care, LLC ("NOVA"),

Consolidated Conservation Inc. ("Consolidated Conservation"), and HighBarr Services, LLC

("HighBarr") (collectively, "Plaintiffs") allege a single count of negligence against Defendants

David Gullotti and No-H2O Franchising, Inc. ("No-H2O") (collectively, "Defendants") claiming

that Mr. Gullotti, a "franchise consultant," provided negligent management and business

consulting services on behalf of No-H2O, which is vicariously liable for that negligent

---

[1] As it must, the Court construes the allegations in the Amended Complaint as true
for purposes of resolving Defendants' Motion to Dismiss under Rule 12(b)(6).

(5:25CV2142)

consulting.[2]  ECF No. 1-1.  Through his role as "franchise consultant," Mr. Gullotti allegedly had an active role in No-H2O's management and should have information regarding No-H2O's "business, operations, trends, financial statements, markets, and present and future business prospects."  ECF No. 1-1 at PageID ##: 7–8, ¶¶ 10, 15–17.  He allegedly met and interacted with some of Plaintiffs' representatives through "in-person presentations, telephone calls, emails, and other forms of communication."  ECF No. 1-1 at PageID #: 6, ¶ 2.  He was "paid to advise on general business operations, strategy, organizational structure, human resources, marketing and sales campaigns, systems or ecological or 'green' issues, and project management."  Plaintiffs claim that Mr. Gullotti's "misuse" of No-H2O caused Plaintiffs to suffer economic losses that benefitted himself and No-H2O.  ECF No. 1-1 at PageID ##: 7, 9, ¶¶ 14, 25.

### B.  Procedural History

Plaintiffs previously filed a civil complaint against Mr. Gullotti, No-H2O, and several other companies and individuals on February 13, 2024, in the Stark County Court of Common Pleas (*GinRoc, Inc. et al. v. Franchise Fastlane LLC et al.*, No. 2024CV295 (Ohio. C.P. 2024)).  Plf. Opp. Br., ECF No. 9 at PageID #: 119.  That case was actively litigated until September 3, 2025, when Plaintiffs voluntarily dismissed the case without prejudice under Ohio Civ.R. 41.  ECF No. 9 at PageID #: 119.  That same day, Plaintiffs re-filed the case in Stark County (*GinRoc, Inc. et al v. David Gullotti et al.* No. 24CV1953 (Ohio C.P. 2025)) against Mr. Gullotti and No-H2O, alleging a single claim of negligence.  ECF No. 9 at PageID #: 119.

---

[2] As discussed below, No-H2O was purportedly served on September 16, 2025, and failed to respond.  ECF No. 1-2 at PageID #: 16.  To date, No-H2O has not responded or defended against the allegations in the Complaint.  There is a question of whether service was accepted by an authorized agent.

(5:25CV2142)

The second complaint was served on Mr. Gullotti at a business address for his company, Biz Build Coach LLC d/b/a EmmerScale ("EmmerScale") (6520 Airport Center Drive, Suite 100, Greensboro, North Carolina 27409) on or about September 10, 2025.  ECF No. 1 at PageID #: 1.  No-H2O was served at its Fort Lauderdale, Florida address.  ECF No. 1-2 at PageID #: 16. To date, No-H2O has made no appearance, answered, or otherwise defended against the Complaint.

Mr. Gullotti timely removed the case on October 7, 2025, under 28 U.S.C. § 1441(a) and (b).  ECF No. 1 at PageID #: 1.  He filed the present Motion to Dismiss, claiming that the Court lacks personal jurisdiction under Fed. R. Civ. P. 12(b)(2), that service was improper under Fed. R. Civ. P. 12(b)(5), and that Plaintiffs failed to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

## II.     LAW AND ANALYSIS

### A.  Service of Process No-H2O

Plaintiff filed the Complaint in Stark County Court of Common Pleas on September 3, 2025.  ECF No. 1-1.  Service on No-H2O was purportedly completed September 16, 2025.  ECF No. 9-2 at PageID #: 140.  The return of service indicates that a "Paul Ciovacco" signed for service. It is not clear whether "Paul Ciovacco" is an authorized agent such that service was proper.  Indeed, the mailing address indicates that service must be sent care of Nicole M. Ciovacco.  Accordingly, Plaintiffs shall perfect service on No-H2O in accord with the Federal Rules of Civil Procedure within 21 days of this Order.  Failure to comply may result in No-H2O's dismissal from this action without prejudice.  *See* Fed. R. Civ. P. 4(m).

3

(5:25CV2142)

### B. Personal Jurisdiction

#### 1. Legal standard under Rule 12(b)(2)

Mr. Gullotti moves to dismiss the case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). When resolving a motion to dismiss under Rule 12(b)(2), courts examine whether: (1) the forum state's long-arm statute establishes personal jurisdiction over the defendant; and (2) personal jurisdiction complies with the Due Process Clause of the United States Constitution. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Even if a defendant falls under Ohio's long-arm statute, the Court still must affirm that exercising personal jurisdiction over the defendant violates "traditional notions of fair play and substantial justice." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 503 (6th Cir. 2020).

In the context of a Rule 12(b)(2) motion, the burden of establishing personal jurisdiction is on the plaintiff. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller*, 504 F.2d at 930). The Court has discretion to resolve the motion on the written submissions, permit discovery, or conduct an evidentiary hearing to resolve the factual question regarding personal jurisdiction. *Id*. Having reviewed the written submissions, the Court need not conduct a hearing nor permit discovery to resolve Mr. Gullotti's pending motion.

"[When] . . . the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat

4

(5:25CV2142)

dismissal.'" *Air Prods. & Controls, Inc.*, 503 F.3d at 549 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)); *Theunissen*, 935 F.2d at 1458.  In that instance, the court views the pleadings and affidavits submitted in a light most favorable to the plaintiff, and the court "should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods*, 503 F.3d at 549 (quoting *Theunissen*, 935 at 1459).  Dismissal is proper "only if *all* the specific facts" alleged by the plaintiff "collectively fail to state a *prima facie* case for jurisdiction." *Gronski v. InContact, Inc.*, 774 F. Supp. 3d 873, 880 (E.D. Mich. 2025) (quoting *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)) (emphasis in original).

### 2.  Ohio's long-arm statute

The Ohio long-arm statute was enacted in 1965.  Ohio Rev. Code § 2307.382; *see* Gerald H. Rubin, *Interpretive Problems of Ohio's Long-Arm Statute*, 19 Case W. Rsrv. L. Rev. 347 (1968).  Historically, plaintiffs were required to demonstrate that a defendant met one of the enumerated criteria in the statute.  *Kroger Co. v Malease Foods Corp.*, 457 F.3d 506, 510 (6th Cir. 2006).  In 2021, however, the Ohio General Assembly amended the statute and added that:

> (C) In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution.

Ohio Rev. Code § 2307.382(C).

There are no extant binding interpretations of this amendment's consequences.  But as federal courts are obligated to "interpret [statutory] language according to its ordinary, contemporary, common meaning[,]" *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (quoting *Sandifer v. United States Steel Corp.*, 571 U.S. 220, 227 (2014) (citation modified), the Court agrees with the growing consensus that "[t]he plain language of § 2307.382(C) allows for

5

(5:25CV2142)

jurisdiction on any basis consistent with the Ohio Constitution and the United States Constitution, without qualification as to specific or general jurisdiction." *Angel's Dream, LLC v. Toledo Jet Ctr., LLC*, 721 F. Supp.3d 601, 610 (N.D. Ohio, 2024) (citation modified).  Guided by the obligation to "discern and apply the law's plain meaning as faithfully as we can[,]" the Court concludes that Ohio's long-arm statute now extends personal jurisdiction to the full limit of constitutional due process.  *See BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 246 (2021).

While the Court need not look beyond the unambiguous text to reach this conclusion, extrinsic sources provide interpretive validation.  The preamble to Ohio Rev. Code § 2307.382(C), for example, indicates it was amended "*to expand the basis of a court's exercise of personal jurisdiction* to include any basis consistent with the Ohio Constitution and the United States Constitution[.]" Amended House Bill No. 272, 133rd Gen. Assemb. (Ohio 2020) (emphasis added).  And the law's legislative history reveals an intent to

> expand[ ] the exercise of personal jurisdiction by a court to include personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution *rather than only allowing a cause of action arising from specific acts enumerated under the Revised Code.*

Ohio Legislative Service Commission, Fiscal Note & Local Impact Statement: H.B. 272 of the 133rd General Assembly, at 1 (2020) (emphasis added).  Although "[l]egislative history has little, if any, role in statutory interpretation when[,]" as here, "the text of the statute is unambiguous," *United States Sportsmen's All. Found. v. Centers for Disease Control & Prevention*, 167 F.4th 813, 821 (6th Cir. 2026), it can still "shed a reliable light on the enacting [l]egislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).  Such evidence, though "often murky, ambiguous, and

6

(5:25CV2142)

contradictory[,]" is "persuasive" in this dispute. *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011).

Finding that Ohio Rev. Code § 2307.382(C) extends personal jurisdiction to the full limit of constitutional due process, "[the] Court's inquiry is [thus] confined to whether exercising personal jurisdiction over [the defendant] comports with traditional notions of fair play and substantial justice." *Bren Ins. Servs., Inc. v. Envision Pharm. Servs., LLC*, No. 5:20-CV-1802, 2022 WL 5160746, at *4 (N.D. Ohio Oct. 5, 2022) (citation modified).

### 3. Due process

Personal jurisdiction requires that a defendant has "minimum contacts" in the forum state, and that their activity in the state comports with "traditional notions of fair play and substantial justice." *See Malone*, 965 F.3d at 503. The "minimum contacts" test considers a defendant's contacts with the forum state, not necessarily with the plaintiff. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 357, 359 (2021) (holding that when the defendant "exploited a market" by selling automobiles and advertising in the forum state and therefore could be subjected to personal jurisdiction.).

There are two types of personal jurisdiction: specific and general. General jurisdiction is inapplicable in this case because Mr. Gullotti is a North Carolina resident, ECF No. 1 at PageID #: 4, ¶ 4, and is not domiciled in Ohio. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (recognizing that general jurisdiction applies to individuals who are domiciled or physically present in the forum state.). Specific jurisdiction, in contrast, is proper when the defendant is not present in, but has "minimum contacts" with, the forum state and that the plaintiff's claim "arise[s] out of or relate to" those contacts. *Ford Motor Co.*, 592 U.S. at 352 (quoting *Bristol Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 256 (2017)).

The Sixth Circuit prescribes a three-part test for assessing specific jurisdiction:

7

(5:25CV2142)

> [1] First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  [2] Second, the cause of action must arise from the defendant's activities there.  [3] Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls, Inc.* 503 F.3d at 550 (brackets added).  "Failure to meet any one of the three prongs means that personal jurisdiction may not be invoked." *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018) (Polster, J.); *LAK, Inc. v. Deer Creek Enterp.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

### i.     Purposeful availment prong

The first prong for specific personal jurisdiction is satisfied when an out-of-state defendant "reaches out beyond one state and create[s] continuing relationships and obligations with citizens of another state." *Calkins v. Danaher Corp.*, 739 F. Supp. 3d 615, 626 (N.D. Ohio 2024) (Boyko, J.) (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)).  For a defendant to purposefully avail themselves, their contacts with the forum state must "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original); *see Means v. United States Conferences of Cath. Bishops*, 836 F.3d 643, 649 (6th Cir. 2016).  A defendant's connections with the forum state must be such that he or she "should reasonably anticipate being haled into court there." *Neogen Corp.*, 282 F.3d at 889 (quoting *Burger King Corp.*, 471 U.S. at 474).

Mr. Gullotti does not dispute that he met with Plaintiffs' representatives, including for GinRoc, an Ohio company, *via* phone and videoconference.  ECF No. 3 at PageID #: 35.  Rather, he argues that, because he was not physically present in Ohio during those correspondences, he

8

(5:25CV2142)

did not purposefully avail himself to Ohio law and jurisdiction.  ECF No. 3 at PageID #: 36.

That argument is unavailing, as courts "consistently reject[] the notion that an absence of

physical contacts can defeat personal jurisdiction." *Burger King Corp.*, 471 U.S. at 476; *Air

Prods. & Controls*, 503 F.3d at 551.  For example, in *Neogen Corp.*, the Sixth Circuit held that

the purposeful availment prong was satisfied because, although the defendant was not physically

located in Michigan, the Pennsylvania company nevertheless invited and conducted business

with Michiganders through its website on a regular basis.  282 F.3d at 891.  More recently, the

Sixth Circuit explained that "if a company holds itself out to a jurisdiction's business and does

regular commerce there, it has fair warning that it could be subject to suit in that location." *AMB

Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *4 (6th Cir. May 8, 2024)

(citing *Ford Motor Co.*, 592 U.S. at 363).  In this case, Mr. Gullotti held himself out to GinRoc,

an Ohio company, as providing business and management consulting services for GinRoc's

Ohio-based franchise operations.  Such contacts are sufficient to satisfy the first prong.

Mr. Gullotti resists this conclusion, relying on several cases to argue that his

communications were insufficient to satisfy the purposeful availment requirement.  He first

points to *Burnshire Development LLC v. Cliffs Reduced Iron Corp.*, in which the plaintiff sought

to litigate a stock purchase agreement breach in Ohio against several foreign defendants.  198 F.

App'x 425 (6th Cir. 2006).  That case directs to the second "arising from" prong, as the court

found that the foreign defendant's Ohio contacts were not proximately related, or even pertinent,

to the termination of the stock purchase agreement at issue such that the claims did not arise out

of those contacts.  198 F. App'x at 432–33.  In any event, the case at bar is distinguishable

because, unlike in *Burnshire*, Mr. Gullotti provided business and management consulting

services to GinRoc, which it implemented in its Ohio-based operations that allegedly caused

injury in Ohio.

(5:25CV2142)

Similarly, Mr. Gullotti's reliance on *International Technologies Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386 (6th Cir. 1997) is misplaced.  That case involved the interpretation and enforcement of a consulting contract negotiated and executed under Swiss law, not Michigan law and, thus, it did not create sufficient contacts with Michigan for personal jurisdiction.  *Id*. at 396.  Moreover, the court found that the alleged injury related not to the defendants' activities in Michigan but the use of intellectual property outside of the forum state's jurisdiction.  *Id*.  The present action, by contrast, concerns allegedly negligent business consulting services provided to Plaintiffs, albeit virtually, that were implemented in Ohio and that caused injury in Ohio.

Finally, in *LAK Inc*., the defendant, an Indiana company, and plaintiff, a Michigan company exchanged correspondence regarding contracts and a real estate sale in Florida.  885 F.2d at 1301.  Notwithstanding the Plaintiff's Michigan citizenship, the court concluded that the defendant had not advertised the property in Michigan, nor reached out to anyone in Michigan to sell the property.  As such, the defendant could not be said to have purposefully availed themselves to Michigan jurisdiction.  *Id*. at 1300–01.  That is not this case.  Here, Mr. Gullotti affirmatively worked with Plaintiffs, including GinRoc, to provide business guidance that he knew would be implemented in their respective franchise operations.  That Mr. Gullotti never visited Ohio does not defeat jurisdiction, particularly when he actively provided services to GinRoc and those services had an impact on an Ohio business and residents.  Thus, the first prong is satisfied.

### ii.    "Arise from" prong

The second prong for specific personal jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulations." *Ford Motor Co.*, 592 U.S. at 359–60 (quoting *Bristol-Myers Squibb Co.*, 582 U.S. at 262).  "This is a 'lenient standard,'

10

(5:25CV2142)

requiring only that the cause of action have a 'substantial connection' to the defendant's activity in the state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903 (6th Cir. 2017) (citing *Bird,* 289 F.3d at 875). The Supreme Court recently held that the second prong "contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor Co.,* 592 U.S. at 362; *Sullivan v. LG Chem, Ltd.,* 79 F.4th 651, 672 (6th Cir. 2023). As noted above, Mr. Gullotti allegedly provided negligent business consulting services to Plaintiffs, including GinRoc. That business advice was, in turn, implemented within Plaintiffs' respective franchise operations, at least one of which was located in Ohio. According to Plaintiffs, Mr. Gullotti's negligent business advice cause injury to Plaintiffs' operations. Thus, the second prong is satisfied.

### iii. Reasonableness

Finally, the third prong requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Air Prods. & Controls, Inc.*, 503 F.3d at 554 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). This prong "ensures that the exercise of personal jurisdiction is consistent with notions of 'fair play and substantial justice.'" *MAG IAS Holdings, Inc.*, 854 F.3d at 903 (quoting *Burger King Corp.*, 471 U.S. at 476–77). Reasonableness is inferred when the first two prongs of the personal jurisdiction test are met. *Id.* at 903. In such cases, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Air Prods. & Controls, Inc.*, 503 F.3d at 554 (quoting *Burger King Corp.*, 471 U.S. at 47) (internal quotations omitted). Courts look to the following factors in determining reasonableness: "'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.'" *City of Monroe Emp. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005)

11

(5:25CV2142)

(quoting *Asahi Metals Indus. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)).  Having

concluded that Mr. Gullotti's contacts with Ohio satisfy the first two prongs, it is his burden to

present a compelling case that exercising jurisdiction would be unreasonable.  *Air Prods. &*

*Controls, Inc.*, 503 F.3d at 554.  He made no such showing.  Accordingly, the Court concludes

that it is reasonable to exercise personal jurisdiction in this case.

For these reasons, the Motion to Dismiss under Rule 12(b)(2) is denied.

**C.  Improper Service**

Fed. R. Civ. P. 12(b)(5) permits dismissal of an action for insufficient service of process.

A plaintiff bears the burden of establishing that service was properly effected in accordance with

Fed. R. of Civ. P. 4.  *Bryd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).  If service is found to be

insufficient, the court has discretion either to dismiss the action without prejudice or to quash

service and permit the plaintiff an opportunity to cure and effect proper service.  Fed. R. Civ. P.

4(m).

"Service requirements are more than mere technicalities; they also implicate due

process."  *Savoie v. City of East Lansing, Mich.*, No. 21-2684, 2022 WL 3643339, at *2 (6th Cir.

Aug. 24, 2022); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991).  Service of

process must be "reasonably calculated, under all the circumstances, to apprise interested parties

of the pendency of the action and afford them an opportunity to present their objections."

*Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 838 (6th Cir. 2007) (citing *Mullane v. Cent.*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Under Rule 4, an individual may be served by:

> (2) doing any of the following:
>> (A) delivering a copy of the summons and of the complaint to
>> the individual personally;

12

(5:25CV2142)

> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process

Fed. R. Civ. Pro. 4(e)(2).  Service may also be made by following state law for either where the case was brought or where service is made.  Fed. R. Civ. P. 4(e)(1).

Although service by certified mail—as was done in this case (*see* ECF No. 3-2 at PageID #: 66)—is permitted under Ohio Civ.R. 4.1, such service must be reasonably calculated to notify the defendant of the pending action.  *Pfahler*, 517 F.3d at 838; *see Samson Sales, Inc. v. Honeywell, Inc.*, 66 Ohio St. 2d 290 (Ohio 1981) ("An elementary and fundamental requirement of due process . . . is notice reasonably calculated . . . to apprise interested parties of the pendency of the action[.]").  "Service of process at an individual's business address may be proper, if the defendant has 'such a habitual, continuous or highly continual and repeated physical presence at the business[.]" *Rapport v. Chapiro,* No. 1:25-cv-02071, 2026 WL 73808, at *2 (N.D. Ohio Jan. 9, 2026) (Flemming, J.) (citing *Hall v. Silber*, 2018-Ohio-1706, 2018 WL 2074743, at *3 (Ohio Ct. App. May 2, 2018)).  It follows then that service is improper when an individual is served at a business premise they do not frequently visit.  *See Bell v. Midwestern Educ. Serv., Inc.*, 89 Ohio App. 3d 193, 202 (Ohio Ct. App. 1993) (holding that service at a business address was insufficient because the defendants only went there once per month).

In addition, service on an individual's employer or business agent does not automatically constitute to service on the individual.  *Newton v. Kardashian*, No. 24-3966, 2025 WL 3200113, at *3 (6th Cir. Sept. 23, 2025).  In *Newton*, the plaintiff delivered the summons to the defendant's business agent, rather than to the defendant themselves.  *Id.*  Although the defendant's agent was

(5:25CV2142)

authorized to accept service for the business, she was not authorized to accept personal service for the defendant.  *Id.*  Thus, the court concluded that service was improper.

In this case, Mr. Gullotti avers that he only visits the EmmerScale business address once or twice per year.  ECF No. 3-2 at PageID ##: 56–57, ¶¶ 19–21.  He further explains that that location is merely a shared workspace, rather than a designated office for that business.  ECF No. 3 at PageID #: 39.  These facts indicate that service to Mr. Gullotti's business address was insufficient.  Moreover, Mr. Gullotti avers that he did not sign the certified mail receipt and that he does not recognize the signature.  ECF No. 3-2 at PageID #. 57, ¶¶ 27–28.  Even if that individual were an agent for EmmerScale, that does not necessarily make them an agent for Mr. Gullotti in his individual capacity.

Plaintiff does not seriously contest that service of process on Mr. Gullotti was improper.  ECF No. 9 at PageID #: 123.  Rather, they argue that, notwithstanding the improper service, Mr. Gullotti received the summons and complaint.  ECF No. 9 at PageID #: 123.  That argument is beside the point, as actual knowledge of a lawsuit is irrelevant to determining whether service was proper.  *See LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999) (stating "This court has indicated . . . that it will not allow actual knowledge of a lawsuit to substitute for proper service under [Rule 4].");  *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004) (same);  *Bell v. Midwestern Educ. Servs., Inc.*, 624 N.E.2d 196, 202 (Ohio Ct. App. 1993).  The Court concludes, therefore, that service at the EmmerScale address was not reasonably calculated to ensure Mr. Gullotti was informed about the pending claim against him.

Although service on Mr. Gullotti was insufficient under Rule 4(e), dismissal is not automatic.  The Court has discretion under Rule 4(m) to permit additional time to perfect service if they "show[] good cause for the failure."  Fed. R. Civ. P. 4(m).  Good cause is a "reasonable,

14

(5:25CV2142)

diligent effort" at proper service. *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021).

Actual notice or a lack of prejudice to the defendant is not good cause. *See id*. Even when a

plaintiff does not show "good cause," Rule 4 permits the Court to exercise discretion to allow

late service or dismiss the case without prejudice. *See Savoie*, 2022 WL 3643339, at *3; *see*

*United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022).

The record in this case does not suggest bad faith or a complete failure to attempt service.

Plaintiffs attempted service on Mr. Gullotti by certified mail at EmmerScale's business address.

Moreover, although not proof of good cause, Mr. Gullotti does appear to have received actual

notice of the action, as evidenced by his reply and motions,[3] and courts have discretion to grant

an extension of service even without good cause. *See Savoie*, 2022 WL 3643339, at *3.

Because service is easily cured in this case, and because Plaintiffs have made good faith efforts

to serve Mr. Gullotti, the Court exercises its discretion and grants Plaintiffs 21 days from the

issuance of this Order to perfect service on Mr. Gullotti consist with the requirements under Rule

4(m).[4]

The motion to dismiss under Rule 12(b)(5) is denied.

---

[3] The Court further notes that Mr. Gullotti appears to have actively litigated the 2024 action against him that was dismissed and then refiled the same day.

[4] Under Rule 4(d)(2)(A)–(B), "[i]f a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant" "the expenses later incurred in making service" and "the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses."

15

(5:25CV2142)

### D. Motion to Dismiss under Rule 12(b)(6)

*1. Legal Standard under Rule 12(b)(6)*

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).  A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiff need not include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (citations omitted).

A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but it suggests more than a sheer possibility that a defendant has acted unlawfully.  *Twombly*, 550 U.S. at 556.  "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. R. 8(a)(2)).  The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference."  *Handy-Clay v. City of*

16

(5:25CV2142)

*Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

### 2. *Discussion*

Mr. Gullotti moves to dismiss the Complaint under Rule 12(b)(6), arguing that Plaintiffs' negligence claim is barred by Ohio's economic loss doctrine.  That doctrine provides that a plaintiff generally may not recover in negligence for purely economic losses.  *See Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x. 491, 496 (6th Cir. 2019); *see Allen v. Wenco Mgmt., LLC*, 696 F. Supp. 3d 432, 438 (N.D. Ohio 2023) (Oliver, J.).  At this juncture, Plaintiffs have sufficiently pled factual allegations which, taken as true, demonstrate the economic loss doctrine is inapplicable.

Ohio's economic loss doctrine has two aspects.  First, "it bars a plaintiff from recovering in negligence for purely economic damages."  *Ross*, 761 F. App'x. at 496; *see Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005).  Second, it bars recovery of damages if the plaintiff only asserts that the defendant's tortious conduct violated a contractual duty.  *Ross*, 761 F. App'x. at 496; *see Corporex*, 835 N.E.2d at 704.  If the plaintiff asserts that the defendant violated a free-standing duty of care, the economic loss doctrine does not apply.  *Ross*, 761 F. App'x. at 496; *Benedettini Cabinets, LP v. Sherwin-Williams Co.*, 695 F. Supp. 3d 948, 963 (N.D. Ohio 2023) (citing *Corporex*, 835 N.E.2d at 705).  Accordingly, Plaintiffs must plausibly allege the existence of an independent duty that Defendants breached to recover for negligence.

First addressing Plaintiff's allegations that Mr. Gullotti owed them an independent fiduciary duty.  ECF No. 1-1 at PageID #: 6, ¶ 2.  To prove a claim for breach of fiduciary duty under Ohio law, Plaintiffs must establish that there was a duty arising from a fiduciary relationship, there was a failure to observe the duty, and there was an injury resulting

17

(5:25CV2142)

proximately from that failure.  *See Cromer v. Children's Hosp. Med. Ctr. of Akron*, 29 N.E.3d 921, 928 (Ohio 2015).

Plaintiffs allege that Mr. Gullotti served as a business consultant, and in that capacity, owed fiduciary duties to Plaintiffs.  ECF No. 1-1 at PageID ##: 8-9, ¶¶ 21–34.  Specifically, the Complaint alleges that Mr. Gullotti advised Plaintiffs regarding "general business operations, strategy, organizational structure, human resources, marketing and sales campaigns, systems or ecological or 'green' issues, and project management" and that Mr. Gullotti was compensated with respect to those services.  ECF No. 1-1 at PageID #: 9, ¶ 25.  The problem with Plaintiffs' contention is that they do not identify any common law, jurisprudence, or statutory source establishing a fiduciary duty on business consultants.  *See Jackson v. Walmart, Inc.*, No. 1:23-cv-01110, 2024 WL 2215952, at *10 (N.D. Ohio May 16, 2024) (Barker, J.) (quoting *Chambers v. St. Mary's Sch.*, 82 Ohio St.3d 563, 565 (Ohio 1998)) (indicating that "[d]uties 'may be established by common law, legislative enactment, or by the particular facts and circumstances of a case.").  Neither must the Court accept as true Plaintiffs' "legal conclusion[s] couched as a factual allegation or an unwarranted factual inference" that some fiduciary duty exists between them and Mr. Gullotti.  *See Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012).  The Court did not identify any source under Ohio law that establishes a fiduciary duty on business consultants owed to their clients.

Regardless, both Ohio and federal courts have held that "[a] defendant's duty to avoid negligently providing false information for the guidance of others in their business transactions is a separate duty owed in tort."  *Detrick v. KCS Int'l Inc.*, 781 F. Supp. 3d 588, 612 (N.D. Ohio 2025) (citing *Haddon View. Invest. Co. v. Coopers & Lybrand*, 436 N.E.2d 212.214 n.1 (Ohio 1982)).  The Ohio Supreme Court, for instance, recognized an exception for third parties seeking recovery for professional negligence in *Haddon View Investment Co. v. Coopers & Lybrand*, 70

(5:25CV2142)

Ohio St.2d 154 (Ohio 1982). In that case, members of a limited partnership brought tort claims and sought economic damages against an accounting firm for negligent misrepresentations made during an audit and upon which those members (who were third parties to the contractual relationship between the partnership and the accounting firm) relied. *Id*. at 155. The court concluded that recovery for purely economic damages from professional negligence was not foreclosed to third parties when they are "a member of a limited class whose reliance on the accountant's representation is specifically foreseen." *Id*. at 156.

The Ohio Supreme Court reaffirmed this exception in *Corporex*, recognizing

> professional liability, and thus a duty in tort, only in those limited circumstances in which a person, in the course of business, negligently supplies false information, knowing that the recipient either intends to rely on it in business, or knowing that the recipient intends to pass the information on to a foreseen third party or limited class of third persons who intend to rely on it in business.

106 Ohio St.3d at 415 (citing Restatement of Torts 2d, 126 – 27, Section 552). In *Corporex*, the court held that the economic loss doctrine barred recovery from a subcontractor because the duties breached were premised upon the terms of the contractor/subcontractor agreement, not an independent duty in tort. *Id*. at 416 ("Whether the underlying contract prohibits or permits recovery for purely economic damages, recovery of those damages in this case is limited by contract principles.").

Mr. Gullotti's attempts to distinguish this case, arguing that he is neither an accountant nor an attorney, miss the mark. In *Detrick*, for instance, the district court concluded that the economic loss doctrine did not bar negligent misrepresentation claims brought against a yacht manufacturer. *Detrick, 781 F. Supp. 3d at 611–12*. Similarly, in *Nations Lending Corporation v. Patillie*, the defendant's counterclaim alleged that he was induced to leave his job and open a residential mortgage lending branch for the plaintiff based on its misrepresentations regarding

19

(5:25CV2142)

underwriting support for the loans produced by defendant's team. No. 1:22-cv-02102, 2023 WL 5671940, at *1 (N.D. Ohio Aug. 23, 2023) (Barker, J.). The court held that both negligent misrepresentation and fraudulent inducement are exceptions to Ohio's economic loss doctrine and, therefore, were not barred by that rule. *Id*. at *8 (collecting cases).

Although Mr. Gullotti is not an accountant or an attorney, he provided business advice and services to Plaintiffs, who foreseeably relied on his advice and representations to their detriment. *See Haddon View Invest. Co.*, 436 N.E.2d at 155–57. Taking the factual allegations as true, Plaintiffs have sufficiently pled that Mr. Gullotti owed a free-standing duty, which he breached, and that breach was the proximate and actual cause for Plaintiffs' injuries. Accordingly, the motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is denied.

### E. CONCLUSION

For the foregoing reasons, Mr. Gullotti's Motion to Dismiss (ECF No. 3) pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6) is denied. The Court grants Plaintiffs 21 days from the issuance of this Order to perfect service on Mr. Gullotti and No-H2O consistent with the requirements under Rule 4(m). Plaintiffs' failure to timely perfect service may result in a dismissal of the unserved party.

A Case Management Scheduling Order shall issue separately.

IT IS SO ORDERED.

August 13, 2026                                    */s/ Benita Y. Pearson*
Date                                               Benita Y. Pearson
                                                   United States District Judge

20